# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **COUVILLION GROUP LLC** | **CIVIL ACTION** |
| **VERSUS** | **NO. 19-676-WBV-KWR** |
| **QUALITY FIRST CONSTRUCTION, LLC** | **SECTION: D (4)** |

### ORDER AND REASONS

Before the Court is Defendant's Motion *In Limine* to Exclude Parole Evidence.[1] Plaintiff opposes the Motion.[2] After careful consideration of the parties' memoranda and the applicable law, the Motion is **DENIED.**

## I. FACTUAL AND PROCEDURAL BACKGROUND

This is a breach of contract case concerning a subcontract entered into between the parties. Couvillion Group, LLC ("Plaintiff"), alleges that in or around January 17, 2017, Quality First Construction LLC d/b/a Quality First Marine, LLC ("Defendant"), contracted with the United States Army Corps of Engineers ("USACE"), for a project known as the Caernarvon Sector Gate Project in St. Bernard Parish.[3] The Caernarvon Sector Gate Project involved the relocation of a hydraulic steel flood control gate along the Mississippi River.[4] Plaintiff alleges that on or about January 23, 2017, it entered into a Subcontract Agreement with Defendant, wherein Plaintiff agreed to furnish all labor, equipment, supplies and material for performing

---

[1] R. Doc. 21.
[2] R. Doc. 26.
[3] R. Doc. 1 at ¶ 7.
[4] *Id*. at ¶ 8.

all operations necessary for installing, dewatering, monitoring, rewatering and removing dewatering components for the hydraulic steel structure.[5]

Plaintiff further alleges that pursuant to the Subcontract Agreement, Defendant contracted with Plaintiff in January 2017 for the rental of a houseboat to be used for a project Defendant maintained with the USACE.[6] Plaintiff asserts that as a result of delays caused by the USACE associated with weld inspections, which was outside the scope of work for Defendant and its subcontractors, Defendant asked Plaintiff to provide a day-rate for the use of the houseboat during this standby time.[7] Plaintiff claims that on May 31, 2017, it submitted an invoice to Defendant for $37,500.00, reflecting Defendant's houseboat rental for March 21, 2017 through May 27, 2017.[8] Plaintiff alleges that Defendant submitted the pricing to the USACE, which paid Defendant for the use of the houseboat, but that Defendant failed to remit that payment to Plaintiff.[9] Plaintiff alleges that Defendant also failed to remit payment on an August 31, 2017 invoice in the amount of $22,108.00, which reflects Plaintiff's charges caused by delays associated with the USACE's weld inspections and charges for assisting one of Defendant's contractors with scaffolding services.[10] Finally, Plaintiff alleges that Defendant failed to remit payment for $25,000.00 worth of extra hours worked from May 18, 2017, to June 14, 2017, which were not previously billed to Defendant.[11] Despite amicable demand, Plaintiff claims Defendant has

---

[5] *Id.* at ¶ 9.
[6] *Id.* at ¶ 11.
[7] *Id.* at ¶ 12.
[8] *Id.* at ¶ 13.
[9] *Id.* at ¶¶ 14-15.
[10] *Id.* at ¶ 16.
[11] *Id.* at ¶¶ 18-19.

refused to pay the outstanding balance of $84,600.00 (the total of the three invoices) owed to Plaintiff. As a result, Plaintiff filed a Complaint in this Court on January 29, 2019, asserting claims for breach of maritime contract, quantum meruit, equitable estoppel/detrimental reliance and for relief under Louisiana's open account statute, La. R.S. 9:2781.[12]

On October 31, 2019, Defendant filed the instant Motion *In Limine* to Exclude Parole Evidence, seeking to preclude Plaintiff from introducing at trial any parole evidence to modify the unambiguous terms of the Subcontract Agreement.[13] Defendant argues that such evidence is inadmissible to the extent it does not relate to a written work order from Defendant or mutual written consent of the parties, as required to modify the terms of the Subcontract Agreement.[14] Defendant also asserts that the Court should exclude any documents that Plaintiff produced or identified in connection with the parties' Joint Pretrial Order[15] that were not listed in Plaintiff's August 5, 2019 exhibit list,[16] which constitute inadmissible parole evidence.[17] Defendant asserts that under the Subcontract Agreement, any variations to the price of Plaintiff's work must be based on mutual written consent of the parties, and any order for extra or additional work, deletions or other modifications to the work can only be made upon Defendant's written order.[18] Defendant argues that because the Subcontract Agreement is unambiguous and Plaintiff has not listed any work orders

---

[12] *Id.* at ¶¶ 23-41.
[13] R. Doc. 21.
[14] R. Doc. 21-1 at p. 1.
[15] R. Doc. 19.
[16] R. Doc. 12.
[17] R. Doc. 21-1 at p. 1.
[18] *Id.* at p. 2 (*quoting* R. Doc. 21-2 at pp. 1-2).

3

or written mutual consents in the Joint Pretrial Order, any other parole evidence is inadmissible to modify the terms of the Subcontract Agreement under Fifth Circuit precedent.[19] Defendant asserts that the parole evidence exclusion is equally applicable to Plaintiff's equitable claims for quantum meruit and equitable estoppel/detrimental reliance.[20] Defendant further asserts that several documents listed in the Joint Pretrial Order are inadmissible parole evidence that should be excluded because they were not included in Plaintiff's August 5, 2019 exhibit list.[21]

Plaintiff opposes the Motion, arguing that it fails to state an adequate basis for exclusion of evidence, ignores applicable law and is an improper attempt by Defendant to refile its Motion for Summary Judgment, which the Court denied with prejudice.[22] Plaintiff asserts that Defendant is attempting to use the parole evidence rule to shield probative evidence from the Court, and that the evidence clearly shows that Defendant requested a modification of the Subcontract Agreement during Plaintiff's standby time, Plaintiff performed the work as requested and Plaintiff is entitled to payment from Defendant.[23] Contrary to Defendant's assertion, Plaintiff argues that the Subcontract Agreement is ambiguous because it does not define the phrase "written order," which Plaintiff claims is susceptible to several different interpretations.[24] Plaintiff points out that Defendant interprets those phrases to require a "written work order," while Plaintiff contends that an email communication

---

[19] R. Doc. 21-1 at pp. 3-4 (citing *LLOG Expl. Co., LLC v. Signet Mar. Corp.*, 673 Fed.Appx. 422 (5th Cir. 2016); *Intl. Marine, LLC v. FDT, LLC*, 619 Fed.Appx. 342 (5th Cir. 2015)).
[20] R. Doc. 21-1 at p. 4.
[21] *Id.* at p. 5 (*citing* R. Doc. 19 at p. 11, Exhibit Nos. 11-14).
[22] R. Doc. 26 at p. 1.
[23] *Id.* at p. 2.
[24] R. Doc. 26 at p. 8.

4

exchanged between the parties could constitute a written order.[25] Plaintiff claims that under Louisiana law, parole evidence is admissible to establish a subsequent agreement modifying a written agreement by oral contracts or conduct of the parties, even when the written contract requires that modifications must be in writing.[26] Plaintiff argues that parole evidence is admissible in this case to show that there was a modification of the Subcontract Agreement during the USACE delays and, specifically, that testimony and written communications demonstrate that Defendant consented to the modifications and benefited from them.[27] Plaintiff contends that none of the evidence runs afoul of the terms of the contract, and that Defendant should not be discharged from its obligation to pay Plaintiff simply because there was no written "work order."

Finally, Plaintiff asserts that Defendant's objections to the additional exhibits listed in the Joint Pretrial Order should be overruled because Defendant will not be prejudiced if the exhibits are used at trial.[28] Plaintiff claims that Defendant will not be prejudiced by the new exhibits because (1) this is a bench trial and the Court has already viewed the exhibits; (2) the exhibits are email communications in which Defendant is a party and they were prepared during the course of work that is the subject of this litigation; (3) Defendant has always been in possession of these documents; and (4) the email communications only became relevant as a result of

---

[25] *Id.*
[26] *Id.* at pp. 8-11 (citing cases).
[27] *Id.* at p. 11.
[28] R. Doc. 26 at p. 12.

5

discussions at the settlement conference with Magistrate Judge Karen Wells Roby.[29] Plaintiff argues that Defendant's objection to the exhibits is disingenuous, since Defendant has similarly submitted documents after the filing of its August 5, 2018 exhibit list,[30] which Defendant intends to use as exhibits at trial.[31]

## II. LEGAL STANDARD

### A. Motion in Limine to Exclude Evidence.

According to the Fifth Circuit, the purpose of a motion in limine is to prohibit opposing counsel "from mentioning the existence of, alluding to, or offering evidence on matters so highly prejudicial to the moving party that a timely motion to strike or an instruction by the court to the jury to disregard the offending matter cannot overcome its prejudicial influence on the jurors' minds."[32] Under Federal Rule of Evidence 401, evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence, or if the fact it seeks to prove is of consequence in determining the action.[33] In the instant Motion, Defendant does not address the Federal Rules of Evidence. Instead, Defendant argues that Plaintiff should be precluded from offering any parole evidence at trial in an attempt to modify the unambiguous terms of the Subcontract Agreement.

---

[29] *Id.*
[30] R. Doc. 13.
[31] R. Doc. 26 at p. 12.
[32] *O'Rear v. Fruehauf Corp.*, 554 F.2d 1304, 1306 n.1 (5th Cir. 1977) (quotation and internal quotation marks omitted).
[33] Fed. R. Evid. 401.

6

## B. Maritime Law Applies.

While the parties appear to agree that the Subcontract Agreement is a maritime contract,[34] the parties disagree on whether the contract is governed by federal maritime law, as Defendant claims,[35] or Louisiana substantive law, as Plaintiff contends.[36] The Subcontract Agreement specifically provides that, "this Agreement shall be governed by and interpreted in accordance with the General Maritime Law of the United States."[37] The Court further finds that under the new test espoused by the Fifth Circuit,[38] the Subcontract Agreement is a maritime contract and, therefore, governed by maritime law. Specifically, the Subcontract Agreement is a mixed-services contract for services to facilitate activity on the navigable waters of the Mississippi River, namely the relocation of a hydraulic steel flood control gate. The Subcontract Agreement also provides that a vessel will play a substantial role in the completion of the contract, as evidenced by the use of a 150-ton crane barge in the work descriptions set forth in Schedule C to the Subcontract Agreement.[39] Because the Subcontract Agreement is a maritime contract, it is governed by federal maritime law.[40]

---

[34] *See* R. Doc. 21-1 at p. 3; R. Doc. 26 at p. 8.
[35] R. Doc. 21-1 at p. 3.
[36] R. Doc. 26 at pp. 8-12.
[37] R. Doc. 21-2 at p. 6, ¶ 25.
[38] *See Barrios v. Centaur, LLC*, No. 18-31203, 2019 WL 5866879, at *4-8 (5th Cir. Nov. 11, 2019) ("In short, *Doiron*'s two-part test applies as written to all mixed-services contracts. To be maritime, a contract (1) must be for services to facilitate activity on navigable waters and (2) must provide, or the parties must expect, that a vessel will play a substantial role in the completion of the contract.") (citing *In re Larry Doirin, Inc.*, 879 F.3d 568, 576 (5th Cir. 2018)).
[39] R. Doc. 21-2 at pp. 10-11.
[40] *LLOG Expl. Co., LLC v. Signet Mar. Corp.*, 673 Fed.Appx. 422, 425 (5th Cir. 2016) (quoting *Int'l Marine, LLC v. Delta Towing, LLC*, 704 F.3d 350, 354 (5th Cir. 2013)) (internal quotation marks omitted).

## C. Defendant's Motion in Limine Must Be Denied.

According to the Fifth Circuit, "A maritime contract . . . whether governed by federal maritime or Louisiana law, should be read as a whole and its words given their plain meaning unless the provision is ambiguous."[41] "Disagreement as to the meaning of a contract does not make it ambiguous, nor does uncertainty or lack of clarity in the language chosen by the parties."[42] The Fifth Circuit has explained that, "Where the written instrument is so worded that it can be given a certain definite legal meaning or interpretation, then it is not ambiguous, and [the court] will construe the contract as a matter of law."[43] Further, "The question of whether a court may consider parol evidence relating to a contract turns largely on whether the evidence is offered to (1) interpret the contract's terms or (2) demonstrate the contracting parties' mutual mistake in failing to accurately record an antecedent agreement in writing."[44] As the Fifth Circuit has explained, parole evidence may not be considered in the course of interpreting unambiguous contractual language.[45]

Here, Defendant seeks a blanket exclusion of all testimony and documentary evidence that Plaintiff seeks to introduce to modify the terms of the Subcontract Agreement. Defendant reasons that any such evidence which "does not relate to a written work order of [Defendant] or mutual written consent of the parties"

---

[41] *Weathersby v. Conoco Oil Co.*, 752 F.2d 953, 955 (5th Cir. 1984).
[42] *LLOG Expl. Co., LLC*, 673 Fed.Appx. at 425 (quoting *Breaux v. Halliburton Energy Servs.*, 562 F.3d 358, 364 (5th Cir. 2009)) (internal quotation marks omitted).
[43] *Breaux*, 562 F.3d at 364 (quoting *Weir v. Fed. Asset Disposition Ass'n*, 123 F.3d 281, 286 (5th Cir. 1997)) (internal quotation marks omitted).
[44] *Richard v. Anadarko Petroleum Corp.*, 870 F.3d 701, 708 (5th Cir. 2017).
[45] *Id.* (citing *Har-Win, Inc. v. Consolidated Grain & Barge Co.*, 794 F.2d 985, 988 (5th Cir. 1986); *Travelers Indem. Co. v. Calvert Fire Ins. Co.*, 798 F.2d 826, 835 (5th Cir. 1988), *aff'd in part and rev'd in part on other grounds on reh'g*, 836 F.2d 850 (5th Cir. 1988)).

constitutes inadmissible parole evidence because no written orders or written consents have been identified as exhibits in the Joint Pretrial Order.[46] Contrary to Defendant's position, the Court finds that the terms "mutual written consent of the parties" and "written order of Contractor," as used in the Subcontract Agreement, are ambiguous. The terms are not defined in the Subcontract Agreement, and the fact that the parties dispute whether an email communication can constitute written consent or a written order from Defendant demonstrates the ambiguity inherent in the two phrases.

The Court further finds, despite Defendant's assertions to the contrary, that Plaintiff has expressly identified several exhibits in the Joint Pretrial Order that Plaintiff claims demonstrate that Defendant requested modifications of the Subcontract Agreement through "mutual written consent of the parties" and/or a "written order of Contractor." Specifically, Plaintiff listed several email communications between the parties with subject lines that appear to concern the unpaid invoices and the unpaid extra hours at issue in this case.[47] The Court finds such exhibits relevant and admissible in this matter because they go to the crux of Plaintiff's case, which is whether Defendant issued a "written order" for "additional work, deletions, or other modifications to the Work," pursuant to Section 8 of the Subcontract Agreement,[48] and whether the parties confected a "mutual written consent" to modify the price owed to Plaintiff, as set forth in Section 2 of the

---

[46] R. Doc. 21-1 at pp. 1, 2.
[47] R. Doc. 19 at p. 11.
[48] R. Doc. 21-2 at p. 2, ¶ 8.

9

Subcontract Agreement.[49] Thus, any testimony or documentary evidence offered in support of those email communications are also relevant and admissible.

To the extent that Defendant specifically seeks to exclude Exhibit Nos. 11-14 listed as Plaintiff's proposed exhibits in the Joint Pretrial Order as untimely disclosed,[50] the Court finds Defendant's position unpersuasive. Both parties assert that they identified new exhibits in the Joint Pretrial Order, which were not included in their August 5, 2019 exhibit lists, as a result of settlement negotiations with Magistrate Judge Roby.[51] The Court agrees with Plaintiff that Defendant will not be prejudiced if the exhibits are introduced at trial because this matter is set for a bench trial, the Court has already reviewed the exhibit list contained in the Joint Pretrial Order and the Court will give the exhibits the appropriate weight that they deserve. The Court also finds that Defendant will not be prejudiced by the exhibits because it was a party to the email communications and, therefore, has always been in possession of the documents. Finally, Defendant has not disputed Plaintiff's assertion that these exhibits were submitted late because they became relevant only as a result of arguments made by Defendant at the parties' settlement conference with Magistrate Judge Roby. As such, Defendant has not established that Plaintiff's proposed Exhibit Nos. 11-14 in the Joint Pretrial Order[52] should be excluded under Fed. R. Evid. 403.

---

[49] *Id.* at p. 1, ¶ 2.
[50] R. Doc. 19 at p. 12.
[51] *See* R. Doc. 21-1 at p. 5; R. Doc. 26 at pp. 3, 12.
[52] R. Doc. 19 at p. 11.

Based on the foregoing, the Court finds that Defendant's Motion in Limine must be denied.

### III.  CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Defendant's Motion in Limine To Exclude Parole Evidence[53] is **DENIED.**

New Orleans, Louisiana, November 15, 2019.

_____
**WENDY B. VITTER**
**United States District Judge**

---

[53] R. Doc. 21.